IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HEATHER C. ROBERTS-LERCH,<br><br>             Plaintiff,<br><br>   v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>            Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 17-3881 (JBS)<br><br>**OPINION** |

APPEARANCES:

Adrienne Freya Jarvis, Esq.
800 North Kings Highway, Suite 304
Cherry Hill, NJ 08034
    Attorney for Plaintiff

Eda Giusti, Special Assistant U.S. Attorney
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 Spring Garden Street, 6th Floor
Philadelphia, PA 19123
    Attorney for Defendant

**SIMANDLE**, District Judge:

## I. INTRODUCTION

This matter comes before the Court pursuant to 42 U.S.C § 405(g) for review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying the application of Plaintiff Heather C. Roberts-Lerch ("Plaintiff") for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. Plaintiff, who suffers from reflex sympathetic dystrophy ("RSD")/chronic regional

pain syndrome ("CRPS") on the right side, rheumatoid arthritis, and other conditions, was denied benefits for the period of disability from March 11, 2011, the alleged onset date of disability, to November 3, 2015, the date on which the Administrative Law Judge ("ALJ") issued a written decision.

In the pending appeal, Plaintiff contends that the ALJ's decision must be reversed and remanded on four grounds. To that end, Plaintiff argues that the ALJ erred by: (1) selectively rejecting the opinions of certain medical sources of record; (2) crafting a Residual Functional Capacity ("RFC") that was not supported by substantial evidence; (3) finding Plaintiff's allegations not entirely credible; and (4) failing to establish that there is other work in the national economy that Plaintiff could perform. For the reasons that follow, the Court will affirm the ALJ's decision.

## II. BACKGROUND

### A. Procedural History

Plaintiff protectively filed an application for SSDI benefits on February 5, 2013, alleging a disability as of March 11, 2011. (R. at 80, 107, 166-72, 184, 188.) The SSA denied Plaintiff's claim on June 14, 2013. (R. at 109-13.) Plaintiff's claim was again denied upon reconsideration on September 12, 2013. (R. at 115-20.) A hearing was held before ALJ Marguerite Toland on May 12, 2015. (R. at 36-79.) ALJ Toland issued her opinion on November 3, 2015,

denying benefits. (R. at 13-29.) On April 6, 2017, the Appeals Counsel denied Plaintiff's request for review. (R. at 1-5.) This appeal timely follows.

**B.    Personal and Medical History**

Plaintiff was 37 years old on the alleged disability onset date and 41 years old at the time of her hearing before the ALJ.[1] (R. at 43, 80.) She graduated from college and earned a master's degree in Elementary Education. (R. at 45, 189.) Between 1996 and March 11, 2011, Plaintiff primarily worked as a kindergarten and elementary school teacher for the Willingboro Board of Education. (R. at 189, 195.) After leaving her job in March 2011, Plaintiff has never tried to go back to work as a teacher. (R. at 43.) Since 2008, Plaintiff has also been the joint owner of a consulting business with her husband, for which her duties include tracking emails and writing/depositing checks.[2] (R. at 47.) She was insured for purposes of SSDI benefits through September of 2017. (R. at 179.)

Plaintiff was diagnosed with descending Guillain-Barre syndrome in February 2008. (R. at 259.) On June 15, 2008, Plaintiff

---

[1] Accordingly, Plaintiff was a "younger person" under the relevant SSA regulations during the alleged period of disability. 20 C.F.R. §§ 404.1563(c), 416.963(c).

[2] The ALJ determined that between March 11, 2011 and the date of the ALJ's decision, Plaintiff's self-employment earnings from her joint-ownership in the consulting business were below substantial gainful activity levels. (R. at 18.)

treated with Dr. Robert J. Schwartzman, M.D., at Hahnemann University Hospital for "pain in my right arm." (Id.) Plaintiff also complained of reduced visual activity, numbness and tingling in the face and body, and pain in her left arm and both legs. (Id.) Dr. Schwartzman observed that Plaintiff "responded well to plasmapheresis," but noted clinical signs of right facial drop, reduced strength of the right upper extremity of 3-4/5, positive Tinel points on the right, positive allodynia[3] in the right arm and leg, mechanical and static allodynia, dynamic allodynia, and some mild neurogenic edema in the right hand, livedo reticularis,[4] and low hemoglobin. (R. at 260.) Plaintiff was treated with intravenous immunoglobulin infusions and cortisone. (R. at 259-61.)

For the next few years, Plaintiff continued to treat with Dr. Schwartzman for her pain-related symptoms. (R. at 263-64, 293-95.) On July 23, 2010, Dr. Schwartzman recommended "Botox injection[s] as needed" due to Plaintiff's "severe chronic pains and inability to function daily." (R. at 292.)

---

[3]    "Allodynia" is commonly understood as "pain produced by a non-noxious stimulus to normal skin." Dorland's Illustrated Medical Dictionary 50 (Elsevier Saunders 32nd ed. 2012).

[4]    "Livedo reticularis" is understood as "a vascular response to any of various disorders, caused by dilation of the subpapillary venous plexus as a result of both increased blood viscosity and blood vessel changes that delay flow away from the skin." Dorland's Illustrated Medical Dictionary 1067 (Elsevier Saunders 32nd ed. 2012).

Plaintiff left her job as a teacher on March 11, 2011. (R. at 18.) At the time, Plaintiff was pregnant and unable to take any medicines for her RSD, including ketamine. (R. at 269.) Medical records indicate that, as of March 21, 2011, she was "on disability for pregnancy and plans add[itional] year of disability after pregnancy from Neuro." (R. at 270.)

On March 14, 2011, Plaintiff reported "[s]evere pain in right brachial plexus distributions," which "radiates across trapezius ridge, down the medial scapular border and primarily into middle trunk posterior cord distributions. This encompasses the triceps, dorsal forearm, [and] dorsal portion of her hand." (R. at 290.) Plaintiff also had "some pain in upper thigh, hip and buttocks," which she described as "occasionally sharp, mostly constant dull pain with some burning." (Id.) Dr. Schwartzman noted that Plaintiff "[j]ust finished teaching for this year and should be on disability for the next year while being treated and taking care of . . . her child at the same time." (R. at 290.) Among other things, he diagnosed Plaintiff with RSD/CRPS on the right side. (R. at 289, 291.)

In April 2011, Plaintiff unfortunately had a miscarriage. (R. at 272-74.) Thereafter, Plaintiff resumed ketamine infusions every three months (R. at R. at 272-73, 464-516), although there is "a gap in the record from May 2011 to February 2013" during which

time Plaintiff did not receive ketamine infusions, as the ALJ noted. (R. at 24.)

On April 3, 2012, Dr. Schwartzman completed a Capacity Questionnaire in conjunction with Plaintiff's application for private disability benefits to Prudential, in which he opined that Plaintiff did not have the capacity to work an eight-hour workday and that he was unable to determine when she could return to full-time work. (R. at 577-78.)

On June 18, 2012, Dr. Schwartzman reexamined Plaintiff for complaints of severe right arm pain. (R. at 284.) Upon examination, he noted that Plaintiff was undergoing treatment for her thyroid and "[w]hen this is complete her pain situation will be reassessed." (R. at 286.) Dr. Schwartzman subsequently administered a right cervical plexus block. (R. at 495-96.)

On December 4, 2012, Dr. Joshua Alpers, M.D., reviewed Plaintiff's claim for disability benefits at the request of Prudential, and opined as follows:

> The diagnosis of CRPS is adequately supported as detailed in the following recommendations. Individuals with CRPS are in constant pain though are only incapacitated during periods of severe pain. As such, she is capable of maintaining employment in a sedentary capacity between these periods of severe pain. However, given the unpredictable nature of her pain and the widespread distribution of symptoms, it appears likely that this would result in a significant reduction in her work hours and would likely prevent her from maintaining gainful employment. Quantification of functional impairment in association with pain is challenging due to the inherent self[-]reported nature of pain. However, as evidenced by her apparent compliance with treatment

6

plans (as reported by Dr. Schwartzman) to include
ketamine infusions, she appears to have made appropriate
efforts to improve her level of functioning. The
recommendations by Dr. Schwartzman in April 2012 are
appropriate, effectively restricting [Plaintiff] to a
sedentary occupation on a part-time capacity. This would
include only occasional standing/walking with sitting up
to four hours per day. Occasional reaching at desk level
and handling are supported although activities including
balance should be avoided as well as a lift/carry
restriction of no more than 10 pounds.

(R. at 432-33.)

On April 23, 2013, Dr. Schwartzman completed a Medical
Examination by Treating Physician form for the State of New Jersey,
wherein he opined that Plaintiff was "totally and permanently
disabled and no longer able to perform his or her job duties and/or
any other job" because she was "unable to use right hand to write
on board, unable to stand for long periods of time. Needs to take
breaks and being a teacher she is unable to." (R. at 581-82.) He
also checked boxes indicating that Plaintiff's disability was
progressive and that there was not a possibility her disability
might improve. (R. at 582.)

On May 27, 2013, Dr. Francky Merlin, M.D., examined Plaintiff.
(R. at 327-29.) On physical examination, Plaintiff's motor
function was 4/5 in the right leg and 5/5 in her other extremities.
(R. at 328.) Dr. Merlin diagnosed Plaintiff with RSD and a history
of rheumatoid arthritis, and opined that Plaintiff "is able to
sit, stand, walk, crouch, hear, and speak." (R. at 329.)

On September 23, 2013, Plaintiff was examined by Dr. Schwartzman's colleague, Dr. Enrique Aradillas, M.D., who noted that Plaintiff had been treating with gabapentin (Neurontin) and had positive Tinel's, Wright's, and Roo's signs. (R. at 505.) Thereafter, Plaintiff followed up with Dr. Ardillas several times. (R. at 543, 606.) On December 12, 2013, Dr. Aradillas performed a stellate ganglion block at C6, which reduced Plaintiff's plain levels from 8/10 to 3/10. (R. 535-36.) The following February, Dr. Aradillas performed another stellate ganglion block at C6, which again reduced Plaintiff's pain levels from 8/10 to 3/10. (R. at 549-50.) On June 19, 2014, Dr. Aradillas administered a trigger point injection at the right shoulder/scapula, which reduced Plaintiff's pain level from 8/10 to 2/10. (R. at 612.) At a follow-up appointment on April 6, 2015, Dr. Aradillas noted that Plaintiff "does well" with ketamine treatments, and that the stellate and trigger point injection "seems to improve the response to ketamine." (R. at 613.)

On April 30, 2015, Dr. Aradillas completed an Attending Physician's Statement for Prudential, wherein he noted that Plaintiff had pain throughout the entire right side of her body and experienced "frequent pain flares" from her "severe CRPS," which "require rest." (R. at 604-05.) Dr. Aradillas opined that Plaintiff could perform "no work." (R. at 605.)

### C. State Agency Consultants

Dr. Elliot Goytia, M.D., a State agency medical consultant, reviewed Plaintiff's medical records and assessed her physical residual functional capacity. (R. at 85-87.) Dr. Goytia opined that Plaintiff could occasionally lift and carry 25 pounds, stand and/or walk (with normal breaks) for six hours in an eight-hour workday, could sit (with normal breaks) for six hours in an eight-hour workday, could frequently climb, balance, stoop, kneel, and crouch, and could occasionally climb ladders/ropes/scaffolds and crawl. (Id.) Dr. Andrew Przybyla, M.D., another State agency medical consultant, reviewed Plaintiff's medical record and opined that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally, could stand four of eight hours, could sit six of eight hours, and could perform occasional pushing, pulling, and reaching with the right upper and lower extremities. (R. at 98-100, 343-44.)

### D. Plaintiff's Statements and Activities

In a Group Disability Insurance form that Plaintiff completed for disability benefits with Prudential on August 16, 2011, Plaintiff reported she prepared her own meals and was able to drive a car. (R. at 562.) According to Plaintiff, her activities and hobbies varied based on her pain level, but included dusting, gardening, weekly shopping for three hours, reading one to four hours daily, watching television about six hours daily, listening

to the radio about an hour daily, and participating in cards/art crafts. (R. at 563-64.) At that time, she was involved in four community organizations and support groups, for a total of five days per month plus one-hour daily, and visited with friends twice per week for three hours at a time. (R. at 564.) Plaintiff stated that she "hope[d] to be able to return to work." (R. at 566.)

In another form that Plaintiff completed for Prudential on April 30, 2014, Plaintiff reported she still prepared her own meals and was able to drive a car. (R. at 570.) Again, Plaintiff stated that her household activities and hobbies varied with her pain level, and included dusting, gardening, washing dishes, and taking out the trash. (R. at 570-71.) She specified that she needed assistance with heavy items when shopping. (R. at 572.) Her other activities remained the same, with the addition of "restorative yoga with modifications" up to twice weekly and reading seven hours daily. (R. at 572-73.)

During a hearing held by the ALJ on May 12, 2015, Plaintiff testified that she stopped working on March 11, 2011 because her RSD symptoms had worsened due to her pregnancy. (R. at 47.) According to Plaintiff, her RSD "mostly affects my right side[,] . . . but it does affect my whole body" and is "usually a deep constant pain." (Id.) Regarding treatment, Plaintiff testified that she receives ketamine every three months, which temporarily helps with the pain, and that she expected the ketamine treatments

to continue indefinitely. (R. at 49-50, 52-53.) Plaintiff confirmed she also took gabapentin (Neurontin) three times daily for her pain symptoms and has received stellate ganglion nerve blocks. (R. at 50.)

Regarding her daily activities, Plaintiff testified at the May 2015 hearing that she cooked "semi-easy things," rinsed dishes, and loaded the dishwasher and laundry machine. (R. at 55.) She also went grocery shopping two to four times a month, watched movies at home, gardened if her husband did the digging, made craft cards, and kept in touch with people on the computer by email and Facebook. (R. at 55-57.)

### E.   Vocational Expert Testimony

During Plaintiff's hearing in front of the ALJ, the ALJ also heard testimony from Beth Kelley, a vocational expert. (R. at 70-77.) Based on Plaintiff's testimony, the vocational expert described Plaintiff's past work as a Teacher, Elementary School (DOT 092.227-010), and Teacher, Kindergarten (DOT 092.227-014), which are both classified as "light" and "skilled" work. (R. at 74.) The vocational expert opined that a person limited to sedentary work and with Plaintiff's RFC could not perform work Plaintiff's past work as a teacher. (R. at 74-75.) The vocational expert further opined that a person with Plaintiff's RFC could perform the work of a final assembler, of which there are approximately 120,000 jobs in the national economy and 2,500 in

New Jersey, a table worker, of which there are approximately 30,000 jobs in the national economy and 400 jobs in New Jersey, and suture sorter, of which there are approximately 20,000 jobs in the national economy and 400 jobs in New Jersey. (R. at 75.) The vocational expert explained that her testimony was based on over 35 years as a vocational rehab counselor in the field. (R. at 77.)

### F. ALJ Decision

In a written decision dated November 3, 2015, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act at any time between the alleged onset date of disability and the date of the ALJ's written decision because, consistent with Plaintiff's age, education, work experience, and RFC, she was capable of performing work as a final assembler, table worker, or suture sorter. (R. at 28.)

At the first stage of the five-step sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 11, 2011, which was the date she stopped working as a teacher for the Willingboro Board of Education. (R. at 18.) The ALJ noted that Plaintiff received some self-employment earnings in 2011, 2012, 2013, and 2014, but determined that these earnings were below substantial gainful activity levels. (Id.)

Next, at step two, the ALJ determined that Plaintiff had the following "severe" impairments: RSD/CRPS; autoimmune induced

brachial plexopathy; history of rheumatoid arthritis; myofascial pain syndrome; and status post Guillain-Barre syndrome. (Id.) The ALJ found Plaintiff's alleged anemia, history of cervical cancer, hyperthyroidism, status post left avulsion fracture, irritable bowel syndrome, and diarrhea to be "non-severe" because "there is no evidence that such impairments caused more than a minimal limitation in [Plaintiff's] ability to perform basic work activities for 12 consecutive months." (R. at 18-19.) The ALJ also found that Plaintiff's medically determinable mental impairments of major depressive disorder and situational anxiety, "do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore non-severe." (R. at 19.) The ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments known as the "paragraph B" criteria, examined Plaintiff's medical records and other relevant evidence, in detail, and described the reasons she found Plaintiff's mental health impairments to be "non-severe," including that, "in April 2011 following the miscarriage of a late-term child [Plaintiff] was treated with Citalopram, but appeared fully oriented and had appropriate mood and affect," that there is "no evidence of outpatient psychiatric care," and that Plaintiff specifically denied any depression or anxiety during RSD/CRPS treatment in 2015." (R. at 19-20.)

At step three, the ALJ concluded that none of Plaintiff's impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, including those set forth in Listings 1.02 and 14.09. (R. at 20-22.)

Between steps three and four, the ALJ determined that Plaintiff possessed the RFC to perform "sedentary work," as defined in C.F.R. § 404.1567(a), except that:

> [S]he can lift no more than 10 pounds and sit up to 6 hours per day, but no more than 1 hour at a time and then would need to stand or shift positions for up to 5 minutes per hour while remaining on task; she can occasionally climb ramps and stairs and stoop; she cannot perform overhead lifting or reaching; she can perform no more than frequent handling; and she would be off task 5% of the workday in addition to normal breaks.

(R. at 31.)

In determining Plaintiff's RFC, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (R. at 22.) Although the ALJ found that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," she concluded that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. at 23.) In doing so, the ALJ analyzed the medical evidence in the record with respect to each of Plaintiff's

impairments, as well as the opinions of various treating physicians and State agency medical consultants. (R. at 22-27.)

In crafting the RFC, the ALJ assigned "little weight" to the opinions of Dr. Schwartzman and Dr. Aradillas that Plaintiff could not work in any capacity and had a permanent disability. (R. 26.) Moreover, the ALJ gave "weight" to the opinions of Dr. Schwartzman and Dr. Alpers that Plaintiff could perform sedentary work, but did not give "weight" to the conclusion that Plaintiff could only perform part-time work due to exacerbations of pain. (Id.) Next, the ALJ gave "some weight" to the opinions of the State agency medical consultants, who found that Plaintiff could perform a range of sedentary work, because their findings "are generally supported by [Plaintiff's] repeated reports of pain and limitations and by the opinions of Dr. Schwartzman limiting [Plaintiff] to sedentary work." (Id.) The ALJ stated that "[m]ore weight is not given . . . as the undersigned finds that [Plaintiff] is more limited than found by the State agency due to [Plaintiff's] subjective reports of pain and limitations." (Id.) Finally, the ALJ assigned "little" weight to Dr. Merlin's opinion "as it is overly vague, does not provide specific functional limitations for consideration, and does not provide any objective medical findings to support the conclusions." (Id.)

Based on Plaintiff's RFC and the vocational expert's testimony from the May 2015 hearing, the ALJ found, at step four,

that Plaintiff was unable to perform her past relevant work as an elementary school and kindergarten teacher. (R. at 27.) At step five, however, the ALJ found that there exists a significant number of jobs in the national economy that Plaintiff can perform, including those of final assembler (120,000 jobs in the national economy), table worker (30,000 jobs in the national economy), and suture sorter (20,000 jobs in the national economy). (R. at 27-28.) Accordingly, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, from March 20, 2013 through the date of the decision. (R. 28.)

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The Court's review is deferential to the Commissioner's decision, and the Court must uphold the Commissioner's factual findings where they are supported by "substantial evidence." 42 U.S.C. § 405(g); see also Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Cunningham v. Comm'r of Soc. Sec., 507 F. App'x 111, 114 (3d Cir. 2012). Substantial evidence is defined as "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 400 (1971); see also Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (using the same language as Richardson). Therefore, if the ALJ's findings of fact are supported by substantial

evidence, those findings bind the reviewing court, whether or not it would have made the same determination. Fargnoli, 247 F.3d at 38. The Court may not weigh the evidence or substitute its own conclusions for those of the ALJ. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Remand is not required where it would not affect the outcome of the case. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

## IV. DISCUSSION

### A. Legal Standard for Determination of Disability

In order to establish a disability for the purpose of disability insurance benefits, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Plummer v. Apfel, 186 F.3d 422, 426 (3d Cir. 1999); 42 U.S.C. § 423(d)(1). A claimant lacks the ability to engage in any substantial activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Plummer, 186 F.3d at 427–428; 42 U.S.C. § 423(d)(2)(A).

The Commissioner reviews claims of disability in accordance with the sequential five-step process set forth in 20 C.F.R. § 404.1520. In step one, the Commissioner determines whether the

17

claimant currently engages in "substantial gainful activity." 20 C.F.R. § 1520(b). Present engagement in substantial activity precludes an award of disability benefits. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). In step two, the claimant must demonstrate that the claimant suffers from a "severe impairment." 20 C.F.R. § 1520(c). Impairments lacking sufficient severity render the claimant ineligible for disability benefits. See Plummer, 186 F.3d at 428. Step three requires the Commissioner to compare medical evidence of the claimant's impairment(s) to the list of impairments presumptively severe enough to preclude any gainful activity. 20 C.F.R. § 1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Plummer, 186 F.3d at 428. Between steps three and four, the ALJ determines the claimant's RFC. 20 C.F.R. § 404.1545. Step four requires the ALJ to consider whether, based on his or her RFC, the claimant retains the ability to perform past relevant work. 20 C.F.R. § 1520(e). If the claimant's impairments render the claimant unable to return to the claimant's prior occupation, at step five the ALJ will consider whether claimant possesses the capability to perform other work existing in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 1520(g), 404.1560(c).

**B. Analysis**

Plaintiff argues that the ALJ erred by: (1) selectively rejecting the opinions of certain medical sources of record; (2) crafting an RFC that was not supported by substantial evidence; (3) finding Plaintiff's allegations not entirely credible; and (4) failing to establish there is other work in the national economy Plaintiff could perform. The Court addresses each argument in turn.

> **1.    The ALJ assigned appropriate weight to the medical opinions of record**

Plaintiff first avers that the ALJ erred in selectively rejecting the opinions of certain medical sources when crafting Plaintiff's RFC. (Pl.'s Br. at 21-26.) Specifically, Plaintiff argues that the ALJ improperly weighted the opinions of Dr. Schwartzman and Dr. Alpers, and erred by finding Plaintiff less limited than did Dr. Przybyla, a State agency medical consultant. (Id. at 22-26.) For the reasons explained below, the Court finds that substantial evidence supports the ALJ's treatment of these medical opinions.

"[T]he ALJ — not treating or examining physicians or State agency consultants — must make the ultimate disability and RFC determinations." Chandler, 667 F.3d at 361; see also 20 C.F.R §§ 404.1527(e)(1). The ALJ is entitled to weigh all the evidence in making his or her finding. Brown v. Astrue, 649 F.3d 193, 196 (3d Cir. 2011). It is established that, "[a]lthough treating and examining physician opinions often deserve more weight . . . [t]he

law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Chandler, 667 F.3d at 361 (citing Brown, 649 F.3d at 197 n.2). Where inconsistency in evidence exists, the ALJ retains significant discretion in deciding whom to credit. Plummer, 186 F.3d at 429. However, the ALJ "cannot reject evidence for no reason or for the wrong reason." Id. (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993)); see also Cotter, 642 F.2d at 704-05.

The ALJ assigned "little weight" to the opinion of Dr. Schwartzman (and Dr. Aradillas) that Plaintiff could not work in any capacity and had a permanent disability because "Dr. Schwartzman's findings of the same are contradicted by his separate finding that [Plaintiff] could perform sedentary work," and "[n]either doctor offered any specific objective medical findings to support such a broad-based conclusion other than [Plaintiff's] diagnosis of RSD/CRPS." (R. at 26.) The ALJ further noted that "treating notes with both physicians indicate that [Plaintiff] had improvement in pain with ketamine infusions and Gabapentin," and that "their treatment with [Plaintiff] appears to taper off in 2014, as they indicated that trigger point and stellate infections further improved [Plaintiff's] response to ketamine injections." (Id.) Moreover, the ALJ gave "weight" to the opinions of Dr. Schwartzman and Dr. Alpers that Plaintiff could perform sedentary work, but did not give "weight" to the conclusion that Plaintiff

could only perform part-time work due to exacerbations of pain because "[s]uch a finding is contradicted by [Plaintiff's] positive response to ketamine and injections, and by [Plaintiff's] admitted daily activities, her self-employment, and her various volunteer work." (Id.)

Substantial evidence supports the ALJ's treatment of these opinions. For example, Dr. Schwartzman's conclusion that Plaintiff could not work in any capacity and had a permanent disability is inconsistent with his own finding that Plaintiff could perform sedentary work (albeit on a part-time basis). (R. at 577-78.) Dr. Alpers, meanwhile, agreed with Schwartzman's assessment that Plaintiff could perform sedentary work on a part-time basis. (R. at 432) ("The restrictions recommended by Dr. Schwartzman in April 2012 are appropriate, effectively restricting [Plaintiff] to a sedentary occupation on a part-time basis."). Moreover, as the ALJ noted, Plaintiff consistently had positive responses to ketamine and injections every three months (R. at 26, 272-73, 288, 464-516, 613), and her written submissions to Prudential and testimony before the ALJ indicated she was independent in many daily tasks, including cooking, dusting, and gardening. (R. at 55-57, 562-73.) On this record, the ALJ did not err.[5]

---

[5]    Moreover, the Court does not find that the ALJ erred by finding Plaintiff less limited than Dr. Przybyla, as Plaintiff argues. (Pl.'s Br. at 22-23.) To the contrary, the ALJ concluded that Plaintiff was restricted to sedentary work (R. at 22), while Dr. Przybyla opined that Plaintiff could perform light work,

2. <u>Substantial evidence supports the ALJ's RFC determination</u>

Plaintiff next argues that the ALJ erred in crafting her RFC. (Pl.'s Br. at 26-27.) To that end, Plaintiff cursorily suggests that the ALJ "failed to properly consider the uncontested, substantial evidence of record relating to [Plaintiff's] CRPS over the course of four years and despite aggressive treatment." (<u>Id.</u> at 27.) To the contrary, the Court finds that substantial evidence supports the ALJ's RFC determination.

SSR 96-8p dictates that the RFC assessment be a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." In order to meet the requirements of SSR 96-8p, the ALJ "must specify the evidence that he relied upon to support his conclusion." <u>Sullivan v. Comm'r of Soc. Sec.</u>, No. 12-7668, 2013 WL 5973799, at *8 (D.N.J. Nov. 8, 2013). Moreover, the ALJ's finding of RFC must be "accompanied by a clear and satisfactory explanation of the basis on which it rests." <u>Fargnoli</u>, 247 F.3d at 41 (quoting <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981)).

_____

including lifting and carrying 10 pounds frequently and 20 pounds occasionally, standing four of eight hours, and sitting six of eight hours. (R. at 98-100, 343-44.) Moreover, where Dr. Przybyla determined that Plaintiff had "unlimited" handling ability (R. at 99), the ALJ found that Plaintiff could only handle "frequently." (R. at 22.) Finally, while Dr. Przybyla opined that Plaintiff could "occasionally" push, pull, and reach with the right upper and lower extremities (R. at 99), the ALJ restricted Plaintiff to no overhead lifting or reaching. (R. at 22.) Clearly, then, the ALJ found Plaintiff to be more limited than did Dr. Przybyla.

In determining Plaintiff's RFC, the ALJ carefully considered and thoroughly discussed all available medical records and the opinions of several doctors who examined Plaintiff. (R. at 22-27.) Ultimately, the ALJ determined Plaintiff could perform sedentary work except that:

> [S]he can lift no more than 10 pounds and sit up to 6 hours per day, but no more than 1 hour at a time and then would need to stand or shift positions for up to 5 minutes per hour while remaining on task; she can occasionally climb ramps and stairs and stoop; she cannot perform overhead lifting or reaching; she can perform no more than frequent handling; and she would be off task 5% of the workday in addition to normal breaks.

(R. at 22.) Having reviewed the lengthy administrative record, including the ALJ's comprehensive decision, and for the reasons discussed <u>supra</u> and <u>infra</u>, the Court finds that substantial evidence supports the ALJ's RFC determination.

### 3. <u>Substantial evidence supports the ALJ's credibility determinations</u>

Plaintiff also argues that the ALJ improperly evaluated her complaints of disabling pain. (Pl.'s Br. at 28-34.) Plaintiff rightly cites to <u>Schaudeck</u>, which states that "[a]n ALJ must give great weight to a claimant's subjective testimony of the inability to perform even light or sedentary work when this testimony is supported by competent medical evidence." (Pl.'s Br. at 28) (citing <u>Schaudeck v. Comm'r of Soc. Sec. Admin.</u>, 181 F.3d 429, 433 (3d Cir. 1999)). However, "the ALJ may reject these complaints when they are inconsistent with objective medical evidence in the

record." <u>Morel v. Colvin</u>, 2016 WL 1270758, at *4 (D.N.J. Apr. 1, 2016) (citing <u>Ferguson v. Schweiker</u>, 765 F.2d 31, 37 (3d Cir. 1985)). Moreover, "[t]he substantial evidence standard entitles an ALJ to considerable deference, especially in credibility findings." <u>Volage v. Astrue</u>, 2012 WL 4742373, at *7 (D.N.J. Oct. 1, 2012) (citing <u>Smith v. Califano</u>, 637 F.2d 968, 969 (3d Cir. 1981)). The Court finds that substantial evidence supports the ALJ's credibility determinations vis-à-vis Plaintiff.

Assessing the degree of pain and its resulting functional impairments from a chronic condition is one of the most challenging determinations to be made by an ALJ; accordingly, in this case, the ALJ devoted substantial care and discernment in her decisions about pain. (R. at 22-27.) The ALJ found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible for the reasons explained in this decision." (R. at 23.) The ALJ adequately set forth her rationale for discounting Plaintiff's subjective allegations of pain and other symptoms, and summarized her RFC determination as follows:

> The undersigned recognizes [Plaintiff's] long history of RSD/CRPS following her hospitalization for Guillain-Barre syndrome. Although the record shows several instances of what appear to be exacerbations of pain, such episodes are sporadic. Further, the record is replete with comments from both [Plaintiff] and her physicians that she had improvement in her pain with ketamine and injections. [Plaintiff] admitted in her testimony that she was not even taking any medications and was relying on infusions, which occur only every 3

24

months. There is no evidence of physical therapy, hospitalizations, or severe exacerbations since the alleged onset date. Additionally, [Plaintiff's] extensive daily activities both at home and in the community contradict her reports of recurrent pain, the need for naps, and inability to function on a daily basis. There is also a question of [Plaintiff's] cessation of work activity, as she stopped working during her pregnancy and planned to stay out of work for an additional year thereafter. Further, although [Plaintiff] was not receiving ketamine during her pregnancy, she did not report any severe exacerbations of pain. Although [Plaintiff's] treating physicians offered blanket opinions of disability, they offered no objective medical findings to support such conclusions and simultaneously indicated that [Plaintiff] had improvement in pain with ketamine and infusions. In noting that [Plaintiff] has had some positive medical findings, such as restricted strength of 4/5 and tenderness on the right side, and in finding her subjective reports of symptoms partially credible, the undersigned finds that [Plaintiff] retains the [RFC] for sedentary work outlined above.

(R. at 26-27.) The Court finds that the ALJ gave enough weight to Plaintiff's subjective complaints of pain by limiting her RFC to a reduced range of sedentary work, and the ALJ's decision derives strong support from the record and it shall not be reversed on this basis.

      4.   <u>Substantial evidence supports the ALJ's step-five determination</u>

Finally, Plaintiff argues that, because the ALJ failed to properly determine Plaintiff's RFC,[6] she erred in interpreting and applying the vocational expert's responses to the hypothetical

---

[6] For the reasons discussed <u>supra</u>, the Court finds that the RFC was based on substantial evidence. Accordingly, the Court will not address this argument a second time.

questions that were posed during the hearing and, therefore, erred at step five. The Court finds that the ALJ did not so err.

In assessing a claimant's application for benefits, the ALJ is required to: (1) ask, on the record, whether a vocational expert's testimony is consistent with the Dictionary of Occupational Titles; (2) elicit a reasonable explanation where an inconsistency appears, and (3) explain in its decision how the conflict is resolved. Zirnsak v. Colvin, 777 F.3d 607 (3d Cir. 2014). If there is a conflict, an explanation must be made on the record and the ALJ must explain in his or her decision how the conflict was resolved. See Burns v. Barnhart, 312 F.3d 113,117 (3d Cir. 2002). The Third Circuit has emphasized that the presence of inconsistencies does not mandate remand, so long as "substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." Zirnsak, 777 F.3d at 617.

At the hearing, the ALJ asked the vocational expert whether any unskilled jobs exist in the national economy for an individual with Plaintiff's age, education, and RFC. (R. at 74-75). As described supra, the ALJ determined Plaintiff could perform sedentary work except that:

> [S]he can lift no more than 10 pounds and sit up to 6
> hours per day, but no more than 1 hour at a time and
> then would need to stand or shift positions for up to 5
> minutes per hour while remaining on task; she can
> occasionally climb ramps and stairs and stoop; she
> cannot perform overhead lifting or reaching; she can

> perform no more than frequent handling; and she would be
> off task 5% of the workday in addition to normal breaks.

(R. at 22.) This is consistent with the relevant interrogatory the ALJ posed to the vocational expert. (R. at 74-75.)

In response to the ALJ's interrogatory, the vocational expert listed three unskilled positions that an individual with Plaintiff's RFC could perform - final assembler, table worker, and suture sorter - and the number of jobs that existed in the national economy for each. (R. at 75.) Additionally, the vocational expert confirmed that her testimony was consistent with the information contained in the Dictionary of Occupational Titles and based on her more-than-35 years of experience as a vocational rehab counselor in the field. (R. at 77.) Thus, the first Zirnsak factor was satisfied.

The ALJ's hypothetical question must include those impairments supported by the record and, thus, convey the established limitations. See Rutherford, 399 F.3d at 555; Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). The ALJ complied with this requirement and her findings were supported by substantial evidence. Accordingly, the ALJ did not err at step five.

## V.  CONCLUSION

For the foregoing reasons, the ALJ's decision will be affirmed. An accompanying order will be entered.


**January 31, 2019**
Date

**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
U.S. District Judge